## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

MICHAEL I. GERDES, )
)
*Plaintiff* )
)
v. )
)
UNITED STATES OF AMERICA, )
)
*Defendant* )

**FILED**

*J.N*

AUG 1 4 2008
Aug 14 2008
MICHAEL W. DOBBINS
CLERK, U.S. DISTRICT COURT

08cv4621
JUDGE CASTILLO
MAG. JUDGE ASHMAN

## COMPLAINT FOR REFUND OF FEDERAL EMPLOYMENT AND WITHHOLD TAXES PAID

NOW COMES THE PLAINTIFF, MICHAEL GERDES ("Gerdes") by and through his attorneys, Burman and Manning, and complains of the Defendant, UNITED STATES OF AMERICA, ("United States"), as follows:

1. This is an action arising under the Internal Revenue laws of the United States for the recovery of tax, penalties, and related interest erroneously and illegally assessed and collected from plaintiff, Michael Gerdes.

2. Jurisdiction in this Court is proper pursuant to 28 U.S.C. Sec, 1346 (a)(1) (Section 1346 (a)(1), Title 28, United States Code and 26 U.S.C. Sec. 7742 (Section 7422, Title 26, United States Code.

3. Plaintiff is a citizen of the United States and of the state of Illinois, residing at 1800 Dewes Street, Glenview, Illinois 60025.

4. On or about the dates set forth below, the Internal Revenue Service assessed penalties under Section 6672 of the Internal Revenue Code (26 U.S.C. Sec.

6672) against Plaintiff for unpaid employment taxes withheld from the wages of employees of Strategic Media Research Inc. (hereinafter referred to as "SMR") for three (3) calendar quarters ("relevant quarters") in the following amounts:

| Date of Assessment | Quarter Ending | Amount |
|---|---|---|
| Mar 27, 2004 | Mar 31, 2000 | $135,636.95 |
| Mar 27, 2002 | June 30, 2000 | $157,649.73 |
| Mar 27, 2002 | Sep 30, 2000 | $330,620.00 |

5. The Internal Revenue Service served written notice on Plaintiff of the above assessments and demanded payment thereof.

6. On or about August 24, 2006, Plaintiff made three (3) separate payments of $200.00 each, each of which was greater than the income tax and Insurance Contributions Act amount withheld from one employee by SMR during the relevant quarters. *See* **Exhibit A.**

7. On or about August 24, 2006, Plaintiff separately filed claims for refund with the Internal Revenue Service for $200.00 each, plus interest on such amounts as provided by law, for the amounts paid for the relevant quarters. True and correct copies of these claims for refund are attached hereto as **Exhibits B, C, and D.** As an exhibit to each of those refund claims, plaintiff attached a copy of his Written Protest to Proposed Trust Fund Recovery Penalty, attached here as Exhibit **E.** Plaintiff hereby incorporates by reference the facts and grounds in support of his claims that are contained in Exhibits B, C, D, and E.

8. The Internal Revenue Service applied Plaintiff's refund due on his 2005

personal income tax return to the payment of this penalty assessment in 2007 in the amount of $5,224.

9. The Internal Revenue Service has never approved, denied, or responded to any of claims for refund for any of the relevant quarters.

10. Based on his authority in SRM and the conditions of SRM's business, Plaintiff was not a person required to collect, truthfully account for, and pay over the withheld employment taxes of the employees of SMR for the relevant quarters. In addition, and in the alternative, Plaintiff did not willfully fail to collect such taxes or truthfully account for and pay over such taxes.

11. SMR was in the media research business in the relevant quarters. Chartwell Capital Management ("Chartwell") owned 60% of SMR's stock and had also made loans to SMR that ultimately reached $2,490,383. During the relevant quarters, Chartwell completely dominated and controlled SMR's board of directors, hired and fired SMR's officers and employees, and controlled its finances.

12. In 1999 and 2000, SMR was in a precarious financial situation and was completely dependent on Chartwell's continuing financial support to stay in business.

13. In the midst of SMR financial problems, Chartwell interviewed Gerdes as a candidate for SMR's vacant position as Chief Financial Officer. After Gerdes received assurances from Chartwell's management that Chartwell would continuing to support SMR, Gerdes accepted the position. Gerdes owned no stock in Chartwell or SMR, had no financial interest in either company, and

worked at SMR as an employee for less than one year, starting in November
1999 and resigning in October 2000.

14. SMR's Board of Directors, as controlled by Chartwell, immediately instructed
Gerdes to prepare a new business plan and the financial data for a Private
Placement Memorandum for SMR, which Gerdes started on in November
1999. At the time, SMR did almost exclusively radio media research, and
Chartwell wanted to re-position SMR to cover internet based media.
Chartwell plan was to make SMR's business and balance sheet attractive to
either third party purchasers or investors through the Private Placement
Memorandum being prepared by Gerdes.

15. In December 1999, Chartwell hired Debbie Richman ("Richman") as
President of SMR. Richman's principal task was to re-position SMR out of
radio media and into internet media. Gerdes reported to Richman.

16. In April 2000, Gerdes hired David Mordka ("Mordka") as a controller.
Mrodka reconciled SMR's accounts to prepare useful financial statements to
be included in the Private Placement Memorandum. In the course of doing
so, Mordka discovered in June 2000 that the woman in charge of payroll had
not been paying the payroll taxes (she was later fired). Mordka advised
Gerdes of the problem, and Gerdes instructed Mordka to prepare a cash
requirements schedule for presentation at the June Board of Director's
meeting.

17. **Exhibit E** is a schedule prepared by Mordka and presented by Gerdes at the
Board of Director's meeting. Exhibit E scheduled payments to be made to the

Internal Revenue Service of $40,000 a week for 7 weeks to completely pay the delinquent payroll taxes.

18. Gerdes had no power to order the payment of these delinquent taxes. His signature authority on SMR's bank account was limited to $5,000. Any payment above that had to be co-signed with President Richman and approved by the Board.

19. As a practical matter, any payment of any size had to be approved not just by the SMR Board of Directors but by Chartwell management, which actively oversaw the use of funds by SMR. As Schedule E shows on the second line "Venture Capital Funding," i.e, loans to be made in the future by Chartwell, Chartwell controlled the use of all of SMR's funds because without the use of those funds SMR was bankrupt.

20. Neither Chartwell, the SMR Board of Directors, or President Richman ever gave Gerdes the authority to pay the delinquent or present payroll taxes. Despite repeated assurances by Chartwell, the Board, and Debbie Richman that the payroll taxes would be paid, they were not paid, and Gerdes was powerless to do anything about it. By October 2000, Gerdes gave up and resigned his position with SMR.

21. On Januay 9, 2001, SMR filed a voluntary petition in bankruptcy with the United States Bankruptcy Court for the Norther District of Illinois. Chartwell's lawyers and accountants (not including Gerdes) scheduled the liability to the IRS as $387,140 for "federal payroll taxes and estimated penalties." According to the IRS, the liability is $967,352.26, of which

$623,906.38 is the trust fund portion. Plaintiff does not have access to the books and records of SMR and cannot resolve this significant difference. Based on his information and belief, the IRS's calculations of the third quarter 2000 liabilities are incorrect and in dispute.

22. On information and belief, funds available at SMR were manipulated or re-allocated in respect to the third quarter liability by individuals at SMR after Gerdes left in October 2000.

WHEREFORE, plaintiff prays that this Court find that plaintiff is entitled to a refund of $600.00 he paid in August 2006 on the relevant quarters, the $5,224 withheld from the taxpayer's 2005 return and applied to the relevant quarters, that plaintiff does not owed any money in respect to the relevant quarters, and such other and further relief as the court deems reasonable and just.

Respectfully submitted,

Richard L. Manning

Attorney for Plaintiff Michael I. Gerdes

Richard L. Manning
Burman and Manning
Suite 1700
190 S. LaSalle Street
Chicago, Illinois 60603
(312) 226-2994
Atty ID 1754297

-6-

**MICHAEL I. GERDES**
1800 DEWES ST #308
GLENVIEW, IL 60025

4240

11-35/1210
72

Date 8/24/06

Pay to the Order of _Internal Revenue Service_ $ 200.00

_Two Hundred and no/100_ ———— Dollars

**Bank of America**
Salinas Main Office
405 S Main St.
Salinas CA
831.755.7850

Customer Since 1991

For _____

⑆121000358⑆4240⑈05687⑈03547⑈

---

**MICHAEL I. GERDES**
1800 DEWES ST #308
GLENVIEW, IL 60025

4239

11-35/1210
72

Date 8/24/06

Pay to the Order of _Internal Revenue Service_ $ 200.00

_Two Hundred and no/100_ ———— Dollars

**Bank of America**
Salinas Main Office
405 S Main St.
Salinas CA
831.755.7850

Customer Since 1991

For _____

⑆121000358⑆4239⑈05687⑈03547⑈

---

**MICHAEL I. GERDES**
1800 DEWES ST #308
GLENVIEW, IL 60025

4238

11-35/1210
72

Date 8/24/06

Pay to the Order of _Internal Revenue Service_ $ 200.00

_Two Hundred and no/100_ ———— Dollars

**Bank of America**
Salinas Main Office
405 S Main St.
Salinas CA
831.755.7850

Customer Since 1991

For _____

⑆121000358⑆4238⑈05687⑈03547⑈

**EXHIBIT A**

Form **843**
(Rev. November 2005)
Department of the Treasury
Internal Revenue Service

## Claim for Refund and Request for Abatement

▶ See separate instructions.

OMB No. 1545-0024

Use Form 843 only if your claim involves (a) one of the taxes shown on line 3a or (b) a refund or abatement of interest, penalties, or additions to tax on line 4a.
**Do not** use Form 843 if your claim is for—
● An overpayment of income taxes;
● A refund for nontaxable use (or sales) of fuel; or
● An overpayment of excise taxes reported on Form(s) 11-C, 720, 730, or 2290.

| Name of claimant  Michael I. Gerdes | Your SSN or ITIN  318 : 46 : 9721 |
|---|---|
| Address (number, street, and room or suite no.)  1600 Dewes Street  Unit 308 | Spouse's SSN or ITIN |
| City or town, state, and ZIP code  Glenview, Illinois 60025 | Employer identification number (EIN) |
| Name and address shown on return if different from above | Daytime telephone number  (    ) |

**1** Period. Prepare a separate Form 843 for each tax period
From   1/ 1 /2000   to   3/ 31 /2000

**2** Amount to be refunded or abated
$   200

**3a** Type of tax, penalty, or addition to tax:
☐ Employment   ☐ Estate   ☐ Gift   ☐ Excise (see instructions)
☑ Penalty—IRC section ▶ 6672

**b** Type of return filed (see instructions):
☐ 706   ☐ 709   ☐ 940   ☑ 941   ☐ 943   ☐ 945   ☐ 990-PF   ☐ 4720   ☐ Other (specify)

**4a** Request for abatement or refund of:
☐ Interest as a result of IRS errors or delays.
☐ A penalty or addition to tax as a result of erroneous advice from the IRS.

**b** Dates of payment ▶ _____

**5**   Explanation and additional claims. Explain why you believe this claim should be allowed, and show the computation of your tax refund or abatement of interest, penalty, or addition to tax. If you need more space, attach additional sheets.

The taxpayer was employed at Strategic Media Research, Inc. as its Chief Financial Officer from October 1999 to October 2000. He held no stock in the company and had been hired by the principal stockholder, Chartwell Capital Management, to prepare a Private Placement Memorandum to be used in connection with Chartwell's attempts to raise an additional $12,000,000 in capital. Chartwell owned 60% of Strategic Media Research and had loaned the company $2,490,383. Chartwell, through its agents, was in direct control of the use of corporate funds. When the taxpayer discovered that a large employment tax liability existed, he immediately prepared an expense payment schedule that provided for the current payment of all employment tax liabilities and the payment of all delinquent tax liabilities within 6 months, and presented the schedule to the Board of Directors. The Board of Directors indicated it intended to pay the scheduled liabilities by advancing additional funds. While additional funds were advanced, Chartwell earmarked those funds for the payment of other expenses. The taxpayer quite the company when it became clear that these liabilities were not being paid. He did not willfully failed to pay over the tax, as required by Section 6672, as he was in no position to order that the funds be used in a manner otherwise than as directed by Chartwell.

The taxpayer also believes that the IRS's calculation of the 941 liability in each period is substantially higher than it actually was.

For further explanation, see Exhibit A attached hereto.

**Signature.** If you are filing Form 843 to request a refund or abatement relating to a joint return, both you and your spouse must sign the claim. Claims filed by corporations must be signed by a corporate officer authorized to sign, and the signature must be accompanied by the officer's title.

Under penalties of perjury, I declare that I have examined this claim, including accompanying schedules and statements, and, to the best of my knowledge and belief, it is true, correct, and complete.

_(signature)_                                               8/29/06
Signature (Title, if applicable. Claims by corporations must be signed by an officer.)        Date

_____
Signature                                                   Date

For Privacy Act and Paperwork Reduction Act Notice, see separate instructions.        Cat. No. 10180R        Form **843** (Rev. 11-2005)


**EXHIBIT B**

Form **843**
(Rev. November 2006)
Department of the Treasury
Internal Revenue Service

## Claim for Refund and Request for Abatement

▶ See separate instructions.

OMB No. 1545-0024

*Use Form 843 only if your claim involves (a) one of the taxes shown on line 3a or (b) a refund or abatement of interest, penalties, or additions to tax on line 4a.*
**Do not use Form 843 if your claim is for—**
- *An overpayment of income taxes;*
- *A refund for nontaxable use (or sales) of fuel; or*
- *An overpayment of excise taxes reported on Form(s) 11-C, 720, 730, or 2290.*

| | | |
|---|---|---|
| Name of claimant<br>Michael I. Gerdes | Your SSN or ITIN<br>318 : 46 : 9721 | |
| Address (number, street, and room or suite no.)<br>1800 Dewes Street  Unit 306 | Spouse's SSN or ITIN<br>: : | |
| City or town, state, and ZIP code<br>Glenview, Illinois 60025 | Employer identification number (EIN)<br>: | |
| Name and address shown on return if different from above | Daytime telephone number<br>(    ) | |

**1** Period. Prepare a separate Form 843 for each tax period
From  4 / 1 / 2000  to  6 / 30 / 2000

**2** Amount to be refunded or abated
$  200

**3a** Type of tax, penalty, or addition to tax:
☐ Employment  ☐ Estate  ☐ Gift  ☐ Excise (see instructions)
☑ Penalty—IRC section ▶ 6672

**b** Type of return filed (see instructions):
☐ 706  ☐ 709  ☐ 940  ☑ 941  ☐ 943  ☐ 945  ☐ 990-PF  ☐ 4720  ☐ Other (specify)

**4a** Request for abatement or refund of:
☐ Interest as a result of IRS errors or delays.
☐ A penalty or addition to tax as a result of erroneous advice from the IRS.

**b** Dates of payment ▶ _____

**5** **Explanation and additional claims.** Explain why you believe this claim should be allowed, and show the computation of your tax refund or abatement of interest, penalty, or addition to tax. If you need more space, attach additional sheets.

**The taxpayer was employed at Strategic Media Research, Inc. as its Chief Financial Officer from October 1999 to October 2000. He held no stock in the company and had been hired by the principal stockholder, Chartwell Capital Management, to prepare a Private Placement Memorandum to be used in connection with Chartwell's attempts to raise an additional $12,000,000 in capital. Chartwell owned 80% of Strategic Media Research and had loaned the company $2,490,383. Chartwell, through its agents, was in direct control of the use of corporate funds. When the taxpayer discovered that a large employment tax liability existed, he immediately prepared an expense payment schedule that provided for the current payment of all employment tax liabilities and the payment of all delinquent tax liabilities within 6 months, and presented the schedule to the Board of Directors. The Board of Directors indicated it intended to pay the scheduled liabilities by advancing additional funds. While additional funds were advanced, Chartwell earmarked those funds for the payment of other expenses. The taxpayer quits the company when it became clear that these liabilities were not being paid. He did not willfully failed to pay over the tax, as required by Section 6672, as he was in no position to order that the funds be used in a manner otherwise than as directed by Chartwell.**

**The taxpayer also believes that the IRS's calculation of the 941 liability in each period is substantially higher than it actually was.**

**For further explanation, see Exhibit A attached hereto.**

**Signature.** If you are filing Form 843 to request a refund or abatement relating to a joint return, both you and your spouse must sign the claim. Claims filed by corporations must be signed by a corporate officer authorized to sign, and the signature must be accompanied by the officer's title.

Under penalties of perjury, I declare that I have examined this claim, including accompanying schedules and statements, and, to the best of my knowledge and belief, it is true, correct, and complete.

_Michael I. Gerdes_                           6/29/06
Signature (Title, if applicable. Claims by corporations must be signed by an officer.)        Date

_____        _____
Signature                                       Date

For Privacy Act and Paperwork Reduction Act Notice, see separate instructions.      Cat. No. 10180R      Form 843


EXHIBIT C

| Form **843** (Rev. November 2005) Department of the Treasury Internal Revenue Service | **Claim for Refund and Request for Abatement** ▶ See separate instructions. | OMB No. 1545-0024 |
|---|---|---|

Use Form 843 only if your claim involves (a) one of the taxes shown on line 3a or (b) a refund or abatement of interest, penalties, or additions to tax on line 4a.

Do not use Form 843 if your claim is for—
- An overpayment of income taxes;
- A refund for nontaxable use (or sales) of fuel; or
- An overpayment of excise taxes reported on Form(s) 11-C, 720, 730, or 2290.

| | |
|---|---|
| Name of claimant **Michael I. Gerdes** | Your SSN or ITIN 318 : 46 : 9721 |
| Address (number, street, and room or suite no.) **1800 Dewes Street  Unit 308** | Spouse's SSN or ITIN : : |
| City or town, state, and ZIP code **Glenview, Illinois 60025** | Employer identification number (EIN) : |
| Name and address shown on return if different from above | Daytime telephone number ( ) |

**1** Period. Prepare a separate Form 843 for each tax period
From 1 / 1 / 2000 to 9 / 30 / 2000

**2** Amount to be refunded or abated $ 600.00

**3a** Type of tax, penalty, or addition to tax:
☐ Employment  ☐ Estate  ☐ Gift  ☐ Excise (see instructions)
☑ Penalty—IRC section ▶ 6672

**b** Type of return filed (see instructions):
☐ 706  ☐ 709  ☐ 940  ☑ 941  ☐ 943  ☐ 945  ☐ 990-PF  ☐ 4720  ☐ Other (specify)

**4a** Request for abatement or refund of:
☐ Interest as a result of IRS errors or delays.
☐ A penalty or addition to tax as a result of erroneous advice from the IRS.

**b** Dates of payment ▶ _____

**5** Explanation and additional claims. Explain why you believe this claim should be allowed, and show the computation of your tax refund or abatement of interest, penalty, or addition to tax. If you need more space, attach additional sheets.

The taxpayer was employed at Strategic Media Research, Inc. as its Chief Financial Officer from October 1999 to October 2000. He held no stock in the company and had been hired by the principal stockholder, Chartwell Capital Management, to prepare a Private Placement Memorandum to be used in connection with Chartwell's attempts to raise an additional $12,000,000 in capital. Chartwell owned 60% of Strategic Media Research and had loaned the company $2,490,383. Chartwell, through its agents, was in direct control of the use of corporate funds. When the taxpayer discovered that a large employment tax liability existed, he immediately prepared an expense payment schedule that provided for the current payment of all employment tax liabilities and the payment of all delinquent tax liabilities within 6 months, and presented the schedule to the Board of Directors. The Board of Directors indicated it intended to pay the scheduled liabilities by advancing additional funds. While additional funds were advanced, Chartwell earmarked those funds for the payment of other expenses. The taxpayer quite the company when it became clear that these liabilities were not being paid. He did not willfully failed to pay over the tax, as required by Section 6672, as he was in no position to order that the funds be used in a manner otherwise than as directed by Chartwell.

The taxpayer also believes that the IRS's calculation of the 941 liability in each period is substantially higher than it actually was.

For further explanation, see Exhibit A attached hereto.

**Signature.** If you are filing Form 843 to request a refund or abatement relating to a joint return, both you and your spouse must sign the claim. Claims filed by corporations must be signed by a corporate officer authorized to sign, and the signature must be accompanied by the officer's title.

Under penalties of perjury, I declare that I have examined this claim, including accompanying schedules and statements, and, to the best of my knowledge and belief, it is true, correct, and complete.

Signature (Title, if applicable. Claims by corporations must be signed by an officer.)    Date 8/24/06

Signature    Date

For Privacy Act and Paperwork Reduction Act Notice, see separate instructions.    Cat. No. 10180R    843

Litigation #CLEX

**EXHIBIT D**

PROTEST

Revenue Agent G. Galloway
Internal Revenue Service
230 S. Dearborn Street
Chicago, Illinois 60604

        Re:    Michael I. Gerdes
                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
                Section 6672 Penalty Re: Strategic Media Research, Inc.

Dear Revenue Officer Galloway:

    Michael I. Gerdes ('taxpayer") herein protests the proposed assessment of a trust fund recovery penalty with respect to Strategic Media Research, Inc., EIN No. 36-3249304 as set forth in your letter of November 26, 2003. A copy of this letter is attached to this protest as Exhibit A. A power of attorney has been duly filed with the Internal Revenue Service and a copy is attached as Exhibit B. In support of this protest, the taxpayer submits the following information:

**1.  Name and Address of Taxpayer**

Michael I. Gerdes
1800 Dewes Street
Unit 308
Glenview, Illinois 60025
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

**2.  Request for Conference**

    The taxpayer believes that the proposed finding of a trust fund recovery penalty is incorrect. Accordingly, the taxpayer requests that this case be forwarded to the Internal Revenue Service Appeals Division in Chicago, Illinois for independent consideration and for a conference attended by the taxpayer's representative.

**3. Date and Sumbols of IRS Letter**

EXHIBIT D

As previously stated, the issuing letter is dated November 26, 2003 and a copy of it is attached as Exhibit A. It is designated as letter 1153(DO) (REV. 3-2002 CAT. NO. 40545C).

### 4. Tax Periods Involved

| Tax Period Ended | Proposed Penalty |
|---|---|
| 3/31/2000 | 135,636.95 |
| 6/30/2000 | 157,649.73 |
| 9/30/2000 | 330,620.00 |

### 5. Findings for Which We Disagree

Micheal I. Gerdes disagrees with the finding that he is a person responsible for the trust fund recovery penalty under Section 6672 of the Internal Revenue Code in respect to any of these liabilities.

### 6. Statement of Facts and Authorities

Strategic Media Reseach, Inc. ("SMR") is an Illinois corporation that was engaged in providing media research to its customer. Its basic work force was about 40 individuals, and most of them were relatively low wage employees working phone banks.

Chartwell Capital Management ("Chartwell") owned 60% of its stock and controlled its board of directors. (Exhibit C) In addition, Chartwell had made a series of loans to SMR which ultimately reached $2,490,383.00. (Exhibit D) During the period in which the payroll tax liabilities accrued, Chartwell completely dominated and controlled the business affairs of SMR. Chartwell was the majority stockholder; it controlled the Board of Directors; it hired and fired SMR's officers and employees, including Gerdes; it provided loans to SMR and designated how those loan proceeds would be used.

Chartwell hired Michael I. Gerdes ("Gerdes") as SMR's Chief Financial Officer in October 1999. Gerdes had done some consulting work for SMR before this, and knew SMR was in a precarious financial situation and was completely depended on Chartwell's continuing support to stay in business. Before agreeing to take the job, Gerdes requested and received assurances from Chartwell that it would continue to support SMR.

Gerdes initial work at SMR related principally to developing a new business plan for SMR. At the time, SMR did almost exclusively radio media research. Chartwell wanted to broaden this into a more internet based media

research company. Chartwell's idea was to make SMR attractive to third party investors or purchasers. To accomplish this, Gerdes worked on the financial aspects of a Private Placement Memorandum throughout the late winter and early spring of 2000. He also worked with Debbie Richman, the newly hired President, to reposition SMR as an internet media research company. He finished his work on the Private Placement Memorandum in June 2000. In it, SMR sought to raise $12,000,000 in capital, of which Chartwell stated it had "committed $2 million and has already funded $1 million." (Exhibit E)

While he was in the process of finishing the Private Placement Memorandum, Gerdes hired Dave Mordka in April of 2000 as a controller. His job was to reconcile all of SMR's accounts so that useful financial statements could be prepared. In the course of doing so, Mordka discovered that the woman in charge of doing payroll had not been paying the payroll tax. He asked her why, and she said there was not enough money to pay them. (She was later fired). Morka discovered this in June 2000, and immediately informed Gerdes. The two of them talked with Debbie Richmond. Gerdes told Mordka to prepare a cash requirements schedule for presentation at the June Board or Director's meeting that would show this, as well as other, problems.

Exhibit F is almost identical to the schedule that Mordka prepared and Gerdes presented at the June Board of Director's meeting. It is not the actual one because we have not been able to obtain any records from SMR, but it is very close to it. In that schedule, on the 3rd and 4th entry for "Disbursements" are "Payroll Hourly" and "Payroll – Bi-Monthly." Those figures include payroll tax payments on those salaries. On Line 13 under "Accounts Payable," it schedules payments to be made to the Internal Revenue Service of $40,000 a week for 7 weeks to catch up completely on the unpaid payroll taxes discovered by Mordka in June. Under the proposed schedule, all of the current payroll tax liabilities would be paid, and the back payroll tax liability would be paid in full in 7 weeks.

Gerdes had no power to order these payments to be made. He was a salaried employee without stock ownership, membership on the Board, or any other financial stake in SMR. In regard to any significant expenditure of money, Chartwell representatives made or had to approve the decisions. Had he known that they would not ultimately fund these liabilities, he would have quit immediately. Quite to the contrary, he was continually assured that Chartwell would financially support SMR and that these tax liabilities would be paid. Indeed, it made perfect sense that Chartwell would clear up these liabilities to create a more attractive financial statement for potential investors and/or purchasers of the company.

Chartwell had in fact agreed to loan SMR a substantial sum of money, although the money had to be drawn down over a period of time as requested by SMR. The money available from Chartwell was more than sufficient to pay the tax liabilities. However, before Gerdes could draw down the money, he had to discuss the specific expenditures that would be paid with the money with Chartwell representatives such as Mindy Lanigan, a Chartwell Vice President. From July to October, 2000, Chartwell always authorized uses of the borrowed funds for purposes other than the payment of taxes. Chartwell wanted the money spent on the IXL program that would make SMR a player in internet media, or some other expenditure that might result in increasing SMR's revenues rather than paying its old bills. Gerdes was powerless to do anything about this; he continued to believe that Chartwell would ultimately provide funds to pay the back taxes because it was in Chartwell's interest to do so and maintain the company as a viable, and possibly saleable, enterprise. By October 2000, Gerdes gave up and resigned his position with SMR.

On January 9, 2001, SMR filed a voluntary petition in bankruptcy with the United States Bankruptcy Court for the Northern District of Illinois on January 9, 2001. In that proceeding, Chartwell's lawyers and accountants (not including Gerdes) scheduled the liability to the IRS as $387,140.00 for "federal payroll taxes and estimated penalties." According to your letter of November 26, 2003, the total payroll tax liability is $967,352.26, and the trust fund penalty portion is $623,906.68. There is obviously a significant difference in these figures. We do not have any access to SMR's books or records. Mr. Gerdes had left SMR prior to the due date of the 3rd quarter 941, prior to the filing of SMR's bankruptcy petition, and prior to the filing of 941 for the 1st and 3rd quarter of 2000 (on November 8, 2001). Because of the discrepancies in these figures, we contest both the tax liability calculations as well as whether Gerdes is a responsible officer within the meaning of Section 6672.

**Legal Authorities**

To be liable for the §6672 penalty, a party must be a responsible "person" of the delinquent corporation. Second, he must have willfully failed to carry out the responsibilities that the tax code imposes on him. *Sawyer v. United States*, 831 F.2d 755, 758 (7th Cir. 1987); *Monday v. United States*, 421 F.2d 1210, 1214-16 (7th Cir. 1970), *cert. denied*, 400 U.S. 821, 27 L. Ed. 2d 48, 91 S. Ct. 38 (1970).

The key to liability under section 6672 is the power to control the decision-making process by which the employer corporation allocates funds to other creditors in preference to its withholding tax obligations. *Purdy Co. v. United States*, 814 F.2d 1183, 1188 (7th Cir. 1987); *Haffa v. United States*, 516 F.2d 931, 936 (7th Cir. 1975). The question is not what title a person held, but whether he had

-4-

actual control over the decision making process. In *White v. United States*, 178 Ct. Cl. 765, 372 F. 2d 513, 516 (Ct. Cl. 1967) the court articulated this concept in the following manner:

> In reaching a determination with respect to the person or persons upon whom to impose responsibility and liability for the failure to pay taxes, the courts tend to disregard the mechanical functions of the various corporate officers and instead emphasize where the ultimate authority for the decision not to pay the tax lies.

In our case, while Gerdes was a corporate officer, he did not have the ultimate authority to make decisions on which of SMR's creditors would be paid. Gerdes owned no stock and possessed no financial stake whatsoever in SMR. He was not on the Board of Director. Gerdes was hired by Chartwell and worked for SMR for less than a year. He did not possess the authority to decide who would be paid. Chartwell did. Chartwell owned 60% of the corporation, controlled the Board of Directors, and had loaned SMR over $2,000,000. Chartwell had a substantial stake in SMR, and it protected that stake by controlling the purse strings. In *Bowlen v. United States*, 956 F.2d 723 (7th Cir. 1992) the Court said;

> Courts have recognized several indicia of responsible person status including ownership of stock or holding of an entrepreneurial stake in a corporation and authority to sign checks on corporate accounts or prevent their issuance by denying a necessary signature. Monday, 421 F.2d 1210 at 1214-15 ; *Godfrey v. United States*, 748 F.2d 1568, 1576 (Fed. Cir. 1984)

Even a third party, such as a bank, that, by virtue of it loans to the company, controlled all decisions on who would be paid, can be held liable under §6672. *Adams v. United States*, 504 F.2d 73 (7th Cir. 1974). The question is who had the "ultimate authority" to decide whether the taxes would be paid. *Adams v. United States*, 504 F.2d at 76.

Finally, Gerdes was told by Chartwell representatives that the taxes would be paid. Gerdes knew that the loan commitments from Chartwell were more than sufficient to pay the taxes. He was told the taxes would be paid. He believed those taxes would be paid because Chartwell had the money, had committed the money, and was trying actively to create an attractive financial statement for SMR to attact additional capital or to sell it to a third party. That would not happen without a clean tax slate.

The liability for these taxes lies with Chartwell, not with Gerdes. For these reason, we respect request that the Appeals Divisions finds that Gerdes is not liable for any §6672 penalty in respect to SMR.

Date: January 23, 2003

Respectfully submitted,

Richard L. Manning

The undersigned, Richard L. Manning, does hereby certify that he prepared the foregoing protest as attorney for and on behalf of Michael I. Gerdes on the basis of information provided to him by his client which he believes to be true and correct.

Richard L. Manning

Internal Revenue Service

Date: November 26, 2003

Department of the Treasury

Number of this Letter:
1153
Person to Contact:
G. GALLOWAY
Employee Number:
36-08952
IRS Contact Address:
INTERNAL REVENUE SERVICE
230 S DEARBORN ST
CHICAGO, IL 60604-

MICHAEL I GERDES
1800 DEWES ST UNIT 308
GLENVIEW, IL 60025-4383

IRS Telephone Number:
(312) 566-3012
Employer Identification Number:
36-3249304
Business Name and Address:
STRATEGIC MEDIA RESEARCH INC
 BANKRUPTCY 01B00715
135 S LASALLE ST STE 3600
CHICAGO, IL 60603-4110

Dear MR MICHAEL I GERDES:

Our efforts to collect the federal employment or excise taxes due from the
business named above have not resulted in full payment of the liability.  We
therefore propose to assess a penalty against you as a person required to
collect, account for, and pay over withheld taxes for the above business.

Under the provisions of Internal Revenue Code section 6672, individuals who
were required to collect, account for, and pay over these taxes for the business
may be personally liable for a penalty if the business doesn't pay the taxes.
These taxes, described in the enclosed Form 2751, consist of employment taxes
you withheld (or should have withheld) from the employees' wages (and didn't
pay) or excise taxes you collected (or should have collected) from patrons (and
didn't pay), and are commonly referred to as "trust fund taxes."

The penalty we propose to assess against you is a personal liability called the
Trust Fund Recovery Penalty.  It is equal to the unpaid trust fund taxes which
the business still owes the government.  If you agree with this penalty for each
tax period shown, please sign Part 1 of the enclosed Form 2751 and return it to
us in the enclosed envelope.

If you don't agree, have additional information to support your case, and wish
to try to resolve the matter informally, contact the person named at the top of
this letter within ten days from the date of this letter.

You also have the right to appeal or protest this action.  To preserve your
appeal rights you need to mail us your written appeal within 60 days from the
date of this letter (75 days if this letter is addressed to you outside the
United States).  The instructions below explain how to make the request.

1

Letter 1153(DO)(Rev. 3-2002)
Cat. No. 40545C



EXHIBIT

A

APPEALS

You may appeal your case to the local Appeals Office.  Send your written appeal to the attention of the Person to Contact at the address shown at the top of this letter.  The dollar amount of the proposed liability for each specific tax period you are protesting affects the form your appeal should take.

| For each period you are protesting, if the proposed penalty amount is: | You should: |
|---|---|
| $25,000 or less | Send a letter listing the issue you disagree with and explain why you disagree. (Small Case Request). |
| More than $25,000 | Submit a formal Written Protest |

One protest will suffice for all the periods listed on the enclosed Form 2751, however if any one of those periods is more than $25,000, a formal protest must be filed.  Include any additional information that you want the Settlement Officer/Appeals Officer to consider.  You may still appeal without additional information, but including it at this stage will help us to process your request promptly.

A SMALL CASE REQUEST should include:

1. A copy of this letter, or your name, address, social security number, and any information that will help us locate your file;

2. A statement that you want an Appeal's conference;

3. A list of the issues you disagree with and an explanation of why you disagree. Usually, penalty cases like this one involve issues of responsibility and willfulness.  Willfulness means that an action was intentional, deliberate or voluntary and not an accident or mistake. Therefore, your statement should include a clear explanation of your duties and responsibilities; and specifically, your duty and authority to collect, account for, and pay the trust fund taxes.  Should you disagree with how we calculated the penalty, your statement should identify the dates and amounts of payments that you believe we didn't consider and/or any computation errors that you believe we made.

Please submit two copies of your Small Case Request.

A formal WRITTEN PROTEST should include the items below.  Pay particular attention to item 6 and the note that follows it.

1. Your name, address, and social security number;

2

Letter 1153(DO)(Rev. 3-2002)
Cat. No. 40545C

2. A statement that you want a conference;

3. A copy of this letter, or the date and number of this letter;

4. The tax periods involved (see Form 2751);

5. A list of the findings you disagree with;

6. A statement of fact, signed under penalties of perjury, that explains why you disagree and why you believe you shouldn't be charged with the penalty.  Include specific dates, names, amounts, and locations which support your position.  Usually, penalty cases like this one involve issues of responsibility and willfulness.  Willfulness means that an action was intentional, deliberate or voluntary and not an accident or mistake.  Therefore, your statement should include a clear explanation of your duties and responsibilities; and specifically, your duty and authority to collect, account for, and pay the trust fund taxes. Should you disagree with how we calculated the penalty, your statement should identify the dates and amounts of payments that you believe we didn't consider and/or any computation errors you believe we made;

   NOTE:

   To declare that the statement in item 6 is true under penalties of perjury, you must add the following to your statement and sign it:

   "Under penalties of perjury, I declare that I have examined the facts presented in this statement and any accompanying information, and, to the best of my knowledge and belief, they are true, correct, and complete."

7. If you rely on a law or other authority to support your arguments, explain what it is and how it applies.

## REPRESENTATION

You may represent yourself at your conference or have someone who is qualified to practice before the Internal Revenue Service represent you.  This may be your attorney, a certified public accountant, or another individual enrolled to practice before the IRS.  If your representative attends a conference without you, he or she must file a power of attorney or tax information authorization before receiving or inspecting confidential tax information.  Form 2848, Power of Attorney and Declaration of Representative, or Form 8821, Tax Information Authorization, may be used for this purpose.  Both forms are available from any IRS office.  A properly written power of attorney or authorization is acceptable.

3                    Letter 1153(DO)(Rev. 3-2002)
                           Cat. No. 40545C

If your representative prepares and signs the protest for you, he or she must substitute a declaration stating:

    1. That he or she submitted the protest and accompanying documents, and

    2. Whether he or she knows personally that the facts stated in the protest and accompanying documents are true and correct.

## CLAIMS FOR REFUND AND CONSIDERATION BY THE COURTS

CONSIDERATION BY THE COURTS

If you and the IRS still disagree after your conference, we will send you a bill. However, by following the procedures outlined below, you may take your case to the United States Court of Federal Claims or to your United States District Court. These courts have no connection with the IRS.

Before you can file a claim with these courts, you must pay a portion of the tax liability and file a claim for refund with the IRS, as described below.

SPECIAL BOND TO DELAY IRS COLLECTION ACTIONS
FOR ANY PERIOD AS SOON AS A CLAIM FOR REFUND IS FILED

To request a delay in collection of the penalty by the IRS for any period as soon as you file a claim for refund for that period, you must do the following within 30 days of the date of the official notice of assessment and demand (the first bill) for that period:

    1. Pay the tax for one employee for each period (quarter) of liability that you wish to contest, if we've based the amount of the penalty on unpaid employment taxes; or pay the tax for one transaction for each period that you wish to contest, if we've based the amount of the penalty on unpaid excise tax.

    2. File a claim for a refund of the amount(s) you paid using Form(s) 843, Claim for Refund and Request for Abatement.

    3. Post a bond with the IRS for one and one half times the amount of the penalty that is left after you have made the payment in Item 1.

If the IRS denies your claim when you have posted this bond, you then have 30 days to file suit in your United States District Court or the United States Court of Federal Claims before the IRS may apply the bond to your trust fund recovery penalty and the interest accruing on this debt.

Letter 1153(DO)(Rev. 3-2002)
Cat. No. 40545C

**CLAIM FOR REFUND WITH NO SPECIAL BOND**

If you do not file a special bond with a prompt claim for refund, as described above, you may still file a claim for refund following above action items 1 and 2, except these action items do not have been to be taken in the first 30 days after the date of the official notice of assessment and demand for the period.

If IRS has not acted on your claim within 6 months from the date you filed it, you can file a suit for refund.  You can also file a suit for refund within 2 years after IRS has disallowed your claim.

You should be aware that if IRS finds that the collection of this penalty is in jeopardy, we may take immediate action to collect it without regard to the 60-day period for submitting a protest mentioned above.

For further information about filing a suit you may contact the Clerk of your District Court or the Clerk of the United States Court of Federal Claims, 717 Madison Place, NW, Washington, D.C.  20005.

If we do not hear from you within 60 days from the date of this letter (or 75 days if this letter is addressed to you outside the United States), we will assess the penalty and begin collection action.

Sincerely yours,

G. GALLOWAY
Revenue Officer


Enclosures:    Form 2751
               Publication 1
               Envelope

Department of the Treasury - Internal Revenue Service

Proposed Assessment of Trust Fund Recovery Penalty
(Sec. 6672, Internal Revenue Code or corresponding
provisions of prior Internal Revenue laws)

## Report of Business's Unpaid Tax Liability

Name and Address of Business EIN: 36-3249304
STRATEGIC MEDIA RESEARCH INC
BANKRUPTCY 01B00715
135 S LASALLE ST STE 3600
CHICAGO, IL 60603-4110

| Tax Return Form No. | Tax Period Ended | Date Return Filed | Date Tax Assessed | Amount Outstanding | Penalty |
|---|---|---|---|---|---|
| 941 | 3/31/2000 | 11/08/2001 | 02/18/2002 | 264,361.51 | 135,636.95 |
| 941 | 6/30/2000 | 07/31/2000 | 11/06/2000 | 157,649.73 | 157,649.73 |
| 941 | 9/30/2000 | 11/08/2001 | 03/25/2002 | 545,341.02 | 330,620.00 |
| | | | | Total Penalty: | 623,906.68 |

============================================================================
Agreement to Assessment and Collection of Trust Fund Recovery Penalty

Name and Address of Person Responsible SSN: 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
MICHAEL I GERDES

1800 DEWES ST UNIT 308
GLENVIEW, IL 60025-4383

I consent to the assessment and collection of the total penalty shown, which is
equal either to the amount of Federal employment taxes withheld from employees
wages or to the amount of Federal excise taxes collected from patrons or
members, and which was not paid over to the Government by the business named
above. I waive the 60 day restriction on notice and demand set forth in
Internal Revenue Code 6672(b).

| Signature of person responsible | Date |
|---|---|
| | |

Cat. No. 21955U                                          Form 2751 (Rev. 7-200
BOD: WI

None ☐   b. List all firms or individuals who, within the two years immediately preceding the filing of this bankruptcy case, have audited the books of account and records, or prepared a financial statement of the debtor.

| NAME AND ADDRESS | DATES SERVICES RENDERED |
|---|---|
| Ernst & Young LLP<br>233 S. Wacker, Suite 1700<br>Chicago, IL 60606 | 1999, 2000 |

None ■   c. List all firms or individuals who, at the time of the commencement of this case, were in possession of the books of account and records of the debtor. If any of the books of account and records are not available, explain.

| NAME | ADDRESS |
|---|---|

None ☐   d. List all financial institutions, creditors and other parties, including mercantile and trade agencies, to whom a financial statement was issued within the two years immediately preceding the commencement of this case by the debtor.

| NAME AND ADDRESS | DATE ISSUED |
|---|---|
| See Attachment A | |

**18. Inventories**

None ■   a. List the dates of the last two inventories taken of your property, the name of the person who supervised the taking of each inventory, and the dollar amount and basis of each inventory.

| DATE OF INVENTORY | INVENTORY SUPERVISOR | DOLLAR AMOUNT OF INVENTORY (Specify cost, market or other basis) |
|---|---|---|

None ■   b. List the name and address of the person having possession of the records of each of the two inventories reported in a., above.

| DATE OF INVENTORY | NAME AND ADDRESS OF CUSTODIAN OF INVENTORY RECORDS |
|---|---|

**19. Current Partners, Officers, Directors and Shareholders**

None ■   a. If the debtor is a partnership, list the nature and percentage of partnership interest of each member of the partnership.

| NAME AND ADDRESS | NATURE AND PERCENTAGE OF INTEREST |
|---|---|

None ☐   b. If the debtor is a corporation, list all officers and directors of the corporation, and each stockholder who directly or indirectly owns, controls, or holds 5 percent or more of the voting securities of the corporation.

| NAME AND ADDRESS | TITLE | NATURE AND PERCENTAGE OF STOCK OWNERSHIP |
|---|---|---|
| Chartwell Capital Management<br>1410 Independent Sq.<br>Jacksonville, FL 32202 | | Approx. 60% |
| Hanson, Kurt<br>3341 N. Wilton<br>Chicago, IL 60657 | Former Chairman, Interim CEO | Approx. 30% |
| Masterson, Bruce<br>AX.com<br>150 S. Wacker Drive, Suite 470<br>Chicago, IL 60606-4103 | Former Chairman | Approx. 5% |

**20. Former partners, officers, directors and shareholders**

None ■   a. If the debtor is a partnership, list each member who withdrew from the partnership within one year immediately preceding the commencement of this case.

| NAME AND ADDRESS | DATE OF WITHDRAWAL |
|---|---|

EXHIBIT

C

In Re:  **STRATEGIC MEDIA RESEARCH, INC.,** Debtor

## LIST OF CREDITORS HOLDING 20 LARGEST UNSECURED CLAIMS

Following is a list of the Debtor's creditors holding the 20 largest unsecured claims.  The list is prepared in accordance with Fed. R. Bankr. P. 1007(d) for filing in this Chapter 11 case.  The list does not include (1) persons who come within the definition of "insider" set forth in 11 U.S.C. Sec. 101, or (2) secured creditors unless the value of the collateral is such that the unsecured deficiency places the creditor among the holders of the 20 largest unsecured claims.

| Company | Nature of Claim | Claim is Contingent, Unliquidated, Disputed or subject to setoff | Contact Person | Telephone | Fax | Amount Claimed |
|---|---|---|---|---|---|---|
| Chartwell 1610 Independant Sq. Jacksonville, FL 32202 | Trade Debt | Disputed | Mindy Lanigan | (904) 355-3919 | (904) 353-5833 | 2,480,363.00 |
| Globalcom 333 W Wacker Dr # 1900 Chicago, IL 60606 | Trade Debt | Disputed | | (312) 895-9819 | | 1,390,325.23 |
| IXL 2121 Palomar Airport Rd., Ste. 200 Carlsbad, CA 92009 | Trade Debt | Disputed | Karen Currie | (760) 827-3728 | (760) 931-0999 | 660,000.00 |
| Internal Revenue Service Kansas City, MO 64999 | Federal Payroll Taxes and estimated penalties | Disputed | | (800) 829-1040 | | 387,140.00 |
| NCO 19 E. Center St. Woodberry, NJ 08095 | Trade Debt | Disputed | Steve Fagan | (800) 793-2348 | (856) 853-0808 | 303,000.00 |
| Survey Sampling One Post Road Fairfield, CT 06430-9964 | Trade Debt | Disputed | Arthur Cardillo | (203) 255-4200 | (203) 254-0372 | 277,912.02 |
| Galatin River Communication 100 N. Cherry St. Galesburg, IL 61401 | Trade Debt | Disputed | Joanne Scott | (877) 345-5244 | (309) 343-6599 | 241,000.00 |
| Illinois, State of 101 W. Jefferson Springfield, IL 62702 | State Payroll Taxes and estimated penalties | Disputed | | 800-732-8866 | | 239,007.00 |
| Media Specialists 1388 W. Indianapolis Avenue Fresno, CA 93705 | Trade Debt | Disputed | John Lee Walker | (559) 437-5900 | (559) 241-5028 | 220,000.00 |
| Teligent 460 Herndon Parkway, Suite 100 Herndon, VA 20170 | Trade Debt | Disputed | Wayne Mattson | (703) 326-4835 | | 219,017.00 |
| Dixon Plaza Associates c/o Ehrmann Gehlbach 215 E. First Street Dixon, IL 61021 | Trade Debt | | Douglas E. Lee | 815-288-4949 | 815-288-3053 | 185,000.00 |
| WBOS 55 Morrissey Blvd Boston, MA 02125 | Trade Debt | | Francis Kelley | 617-822-6200 | 617-822-6599 | 148,000.00 |
| Westgate Financial Group 305 W. Wisconsin Street Chicago, IL 60614 | Trade Debt | Disputed | Brandon Walsh | 312-337-1653 | | 105,000.00 |

EXHIBIT
D

# STRATEGIC
### media research

# EXECUTIVE SUMMARY

## Overview

Strategic Media Research, Inc. ("SMR" or the "Company"), founded in 1980, is a leading provider of audience management services ("AMS") for electronic media clients. The Company combines the advantages of long-term professional experience serving leading traditional electronic media companies; well-established market credibility in providing these services; and unique, cutting-edge web-based technologies that complement traditional methodologies. A significant opportunity now exists to leverage these capabilities and capture the new market for web sites driven by advertising or subscription revenue.

SMR is raising $12 million of capital to take advantage of this opportunity. Chartwell Capital Investors II, L.P. ("Chartwell II"), which is managed by the Company's existing venture capital firm, Chartwell Capital Management Company, Inc. ("Chartwell"), has committed $2 million of this amount and has already funded $1 million. The $2 million commitment by Chartwell II will increase the total investment by entities managed by or related to Chartwell to approximately $7.7 million. The $12 million funding will satisfy SMR's projected cash flow needs until the Company achieves profitability and positive cash flow.

SMR's audience management services encompass research, marketing and software applications designed to provide media clients with insights about their audiences. While competing media researchers, such as Arbitron and Nielsen, simply track audience numbers, SMR analyzes factors that motivate audiences by tracking personal preferences and how they change over time. Their services enable clients to better tailor program content for consumers of both traditional media (radio, TV and cable) and new media (Internet).

Media companies have always sought to manage their audiences, but felt less financial pressure to do so when there were limited alternative media outlets and audiences were somewhat captive. Recently, traditional media companies have been impacted by significant market changes and technological advances, dramatically increasing their demand for AMS. Of all the factors affecting traditional media, the one of greatest importance is the Internet pipeline which lowers barriers to entry relative to radio and television. The number of web sites offering entertainment and information is rapidly increasing, and these sites are now directly competing with both the traditional media outlets and their web sites. According to BIA Financial, Internet advertising is expected to reach $22 billion in 2004, the current level for total radio advertising; and $52 billion in 2009, the current television advertising level.

In addition to increasing demand for SMR's services by traditional media companies, the Internet has created a new and rapidly growing market for the Company. Media web sites using SMR's services will be better able to target their audiences, increase site traffic, streamline the click-through experience and gain a sharp competitive edge. Web sites are now the Company's primary market, while traditional media remains a large, secondary market. There is no other company offering comprehensive web-based AMS today, and SMR faces no consistent direct competition across media segments.

The Company's business strategy is designed to exploit the continued, explosive growth in new media and the dramatic changes occurring in traditional media. SMR directly benefits from these changes by providing services to all types of electronic media and by actively targeting new customers. This strategy also allows its success to remain independent of the success of any particular medium or customer.

EXHIBIT
B

## WESTGATE FINANCIAL GROUP LLC

-1-

**Strategic Media Research**
**Weekly Cash Flow Analysis**
**For the Quarter Ending September 15, 2008**
**As of 6/23/00**

EXHIBIT
F